IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case Nos. 3:09 CR 19 |
| | 3:12 CV 1928 |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| -vs- | AND ORDER |
| | |
| Antuane Hamilton, | JUDGE JACK ZOUHARY |
| | |
| Defendant. | |

*Pro se* Defendant Antuane Hamilton, a prisoner in federal custody, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 108), as well as two Amendments to his Motion (Docs. 110 & 111).  The Government filed a Response to the Motion and Amendments (Doc. 112).  After the Government filed its Response, Defendant filed a Motion to Withdraw his original Section 2255 Motion (Doc. 113).  For the reasons stated below, Defendant's Motions are denied.

### BACKGROUND

On the evening of March 25, 2008, Nathan Schank, the cook at the Six Pack Bar and Grill in Toledo, Ohio, heard a loud bang from the men's bathroom.  Upon entering, Schank saw two men: Corey Baldwin and Defendant.  According to Schank, a gun holster laid on the floor of the smoke-filled bathroom.  Defendant told Schank that a lightbulb had popped.  Schank picked up the holster

and left. Ten minutes later, Defendant, clad in a black leather coat, told Schank the holster belonged to him. When Schank refused to return it, a scuffle ensued, and Defendant attempted to flee.

Police arrested Defendant after giving chase, and found the black leather coat on some shrubbery near the site where they apprehended him. The coat contained a nine-millimeter Taurus revolver. The gun's cylinder contained four live rounds and a spent casing. Ownership records revealed the gun had been purchased three years earlier by Defendant's then-girlfriend. The police also recovered a bullet fragment in the wall of the men's restroom at the Six Pack. Forensics showed the bullet was fired from the same Taurus revolver. At the police station, Defendant signed a written waiver of his *Miranda* rights and confessed that he had carried the gun in his coat pocket while he was at the Six Pack.

A federal grand jury indicted Defendant as a felon in possession of a firearm (Doc. 1). Attorney Donna Grill was appointed to represent Defendant at his arraignment. Grill conducted discovery and filed a Motion to Suppress Defendant's statements to police following his arrest (Doc. 17). Grill was then granted leave to withdraw and attorney Sam Eidy was appointed to represent Defendant (Doc. 21). Eidy withdrew the Motion to Suppress and conducted discovery. Eidy filed an unsuccessful Motion to Dismiss on the ground that the Government had neglected to interview two witnesses -- LaQuan Stuart and Charee Johnson (Doc. 33).

About two months before trial, Eidy was granted leave to withdraw, and Defendant retained attorney John Thebes (Doc. 36). Thebes filed another Motion to Suppress Defendant's statements following his arrest (Doc. 38), which was denied after a hearing (Doc. 46). At the hearing, Defendant rejected a plea offer from the Government and elected to proceed to trial with Thebes as counsel. Defendant stated during the hearing that he had discussed the risks of rejecting the plea agreement with

2

counsel, and confirmed he understood the risks after the Government's attorney summarized the risks to the Court (7/20/09 Hr'g Tr. at 3-5; *see also* 8/7/09 Hr'g Tr. at 11).

At trial, defense witness LaQuan Stuart, an alleged former lover of Defendant, testified he had brought the gun to the Six Pack, not Defendant, to confront Defendant about cheating on him. According to Stuart, he dropped the gun while he was in the restroom (which caused it to fire), hid in a stall for thirty minutes, and then slipped the gun into Defendant's coat pocket during Defendant's fight with Schank. Defendant's sister, Charee Johnson, provided testimony corroborating Stuart's version of events.

Despite Stuart's testimony, the jury found Defendant guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). At sentencing, this Court found Defendant was an armed career criminal under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), and sentenced him to 216-months imprisonment. Defendant appealed, and the Sixth Circuit affirmed. *United States v. Hamilton*, 445 F. App'x 841 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1727 (Mar. 5, 2012). Defendant then filed the instant Motion in this Court, alleging ineffective assistance of counsel.

## MOTION TO WITHDRAW SECTION 2255 MOTION

In his recent Motion to Withdraw, Defendant contends that after reviewing the Government's Response, he has a better understanding of the nature of claims that may be brought in a Section 2255 motion and would like the opportunity "to continue to study and learn for himself the proper way to submit his motion with the correct claims which may warrant relief" (Doc. 113 at 2). Defendant's request is denied.

At this juncture, the Government having filed a Response to the pending Section 2255 Motion, Defendant may only dismiss the pending Motion by order of this Court. *See* FED. R. CIV. P. 41(a)(2).

3

This Court finds that Defendant has failed to show good cause to dismiss the pending Section 2255 Motion. Defendant has not identified what better or different claims might be brought in a new Section 2255 motion and none are readily apparent to this Court. Defendant acknowledges that he seeks to withdraw in the face of what he perceives to be near certain defeat, but offers no new or better claims.

A number of courts have held that a second Section 2255 motion, filed after the first is voluntarily withdrawn or dismissed when the motion is fully briefed, is a successive motion and therefore may only be considered after approval from the court of appeals. *See* 28 U.S.C. § 2244. For example, the Seventh Circuit has stated that if a prisoner gets a collateral attack under way and then "abandons it in the face of defeat," that proceeding must count for purposes of determining whether a later-filed Section 2255 motion is a successive motion. *Johnson v. United States*, 196 F.3d 802, 804 (7th Cir. 1999). Thus, granting Defendant's request to dismiss and refile could ultimately result in his post-conviction claims never being fully considered on the merits; a disadvantageous outcome for Defendant.

### STANDARD OF REVIEW

Only the sentencing court may entertain a Section 2255 motion filed by a person in federal custody, and only on the ground his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 is the primary avenue for relief for federal prisoners "protesting the legality of their sentence." *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). "[G]rounds for relief under [Section 2255] are equivalent to those encompassed by [Section 2254] . . .

under which relief is available on the ground that [a person] is in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. United States*, 417 U.S. 333, 344 (1974). Because Defendant is *pro se*, the allegations in his Motion must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *See Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

## DISCUSSION

For a claim of ineffective assistance of counsel, a defendant must ordinarily prove two components: (1) deficiency of counsel's performance, and (2) a "reasonable probability" counsel's deficient performance affected the outcome. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Under the first prong, the burden is on a defendant to "identify[] the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Judicial scrutiny of trial counsel's performance must be "highly deferential." *Id.* at 689. Under the second prong, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Defendant identifies many acts and omissions relating to his trial counsel's strategy and his counsel's argument to the jury. Defendant alleges, with varying degrees of specificity, that he received ineffective assistance of counsel because his trial counsel failed to take a number of steps and make a number of arguments, each of which Defendant contends would have been appropriate in this case and resulted in a different outcome (*see* Doc. 108 at 4-8, Doc. 108-1 at 9-16).

**Decision Not to Testify at Trial**

Defendant alleges his trial counsel refused to permit him to testify at trial. Defendant's bare assertion alone, however, is insufficient to overcome the "strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). To overcome this presumption, Defendant would need to present record evidence that he somehow alerted the trial court of his desire to testify. *Id*. Defendant has presented no such evidence, and the Government has submitted a sworn statement from Defendant's trial counsel stating that he did not refuse to allow Defendant to testify (Doc. 112-1 at 2). Defendant's unsupported allegations that he wanted to testify and was prevented from doing so do not suffice to overcome the presumption he assented to the tactical decision not to testify, and his claim fails.

**Plea Agreement**

Similarly, Defendant alleges he was not adequately informed of the risks of his choice to accept a plea agreement or go to trial. However, substantial evidence in the record, including an affidavit from trial counsel, demonstrates that Defendant thoroughly discussed the possible outcomes with his attorney (7/20/09 Hr'g Tr. at 3-5; Doc. 112 at 1-2). Defendant, in fact, acknowledged to this Court in his July 2009 motion hearing he understood the risks and had discussed them with counsel (7/20/09 Hr'g Tr. at 3-5).

**Efforts to Suppress Defendant's Confession**

Defendant also argues his counsel should have introduced additional evidence of his intoxication in an attempt to suppress his confession as a violation of his *Miranda* rights. In fact, Defendant's counsel twice filed a Motion to Suppress Defendant's confession on this basis (Docs. 17

6

& 38), but this Court found Defendant's waiver of his *Miranda* rights had been knowing, voluntary, and intelligent (Docs. 46 & 50). The Sixth Circuit affirmed, noting that defendants can waive *Miranda* rights when intoxicated. *Hamilton*, 445 F. App'x at 843-44 (6th Cir. 2010) (citing *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010)).

## Defendant's Sentencing as a Career Offender Under the ACCA

Defendant argues he should not have been sentenced as a career offender under the ACCA for several reasons, and counsel erred by failing to convince this Court as much. The ACCA-qualifying crimes all occurred in 1990. Although Defendant was seventeen at the time, he was prosecuted as an adult for all three crimes in the Lucas County Court of Common Pleas (PSR ¶ 33). Defendant was convicted of felonious assault with a firearm in connection with an incident that occurred on June 28, 1990 (PSR ¶ 33). Defendant was also convicted of aggravated robbery with a firearm specification in connection with an August 28, 1990 robbery (PSR ¶ 33). Finally, Defendant was convicted of a burglary that occurred on October 8, 1990 (PSR ¶ 33). Defendant was arrested for all three crimes at the same time and later sentenced for all three crimes on May 8, 1991 (PSR ¶ 33). He was incarcerated in the Ohio prison system until his release to parole supervision in January 2001 (PSR ¶ 33).

### *Commission of Separate Offenses*

First, Defendant argues his prior convictions fit the definition of a "spree" because he received his sentences for each of the three crimes on the same date, and therefore they should be counted as a single criminal act for purposes of the ACCA (Doc. 108 at 5). Defendant cites *United States v. Hill*, 440 F.3d 292 (6th Cir. 2006) for the proposition that crimes committed during a continuous "spree" are not counted separately (Doc. 108-1 at 15). However, in that case, the Sixth Circuit held that offenses will be considered separate if: (1) they are are "committed on occasions different from one

another," meaning it is possible to discern the point at which the first offense is completed and the second offense begins; (2) it would have been possible for the offender to cease his criminal conduct after the first offense and withdraw without committing the second offense; or (3) the offenses are committed in different residences or business locations. *Id*. at 297-98.

In this case, all three indicia of separateness are present. Defendant's ACCA-qualifying crimes were each committed two months apart, and were each committed in different locations (PSR ¶ 33; *see also* 11/30/09 Sentencing Hr'g Tr. at 4). The three offenses were completed separately and apart from one another, and Defendant certainly had time to refrain from committing the next offense. Because the acts are separate offenses, they cannot be considered a spree, and Defendant was properly sentenced as an armed career offender under the ACCA. Defendant's trial counsel argued at the sentencing hearing that the spirit of the statute covered only defendants who served time in between offenses, but the argument was rejected by this Court (11/30/09 Sentencing Hr'g Tr. at 6-7).

### *Commission of Violent Crimes*

Defendant also argues his state convictions are not violent crimes, and should not be counted for purposes of the ACCA. The ACCA, however, includes in its definition of "violent felonies" all three of the crimes for which Defendant was convicted in 1990. Under the ACCA, "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . [that] has as an element the use, attempted use, or threatened use of physical force . . . or is a burglary." 18 U.S.C. § 924(e)(2)(B). Defendant's June and August 1990 offenses both involved a firearm and the use or threatened use of physical force, and his October 1990 offense was burglary. Defendant was sentenced to five to fifteen years for each crime (PSR ¶¶ 33-35). Defendant's offenses therefore fall squarely

within the language of the statute and Defendant's counsel cannot be faulted for not arguing to the contrary.

The case Defendant cites, *Jones v. United States*, 689 F.3d 621, 626 (6th Cir. 2012), is inapposite because it involves a conviction for reckless homicide. A crime involving the *mens rea* of recklessness lacks the required intent for a qualifying offense under Section 924(e)(2). *Id*. Here, the necessary intent was present in all three of Defendant's predicate offenses. Because the argument is unavailing, counsel was not ineffective for failing to raise it.

### *Inclusion of Juvenile Offenses*

Defendant also argues his 1990 convictions should not count for purposes of the ACCA because he committed the offenses at the age of seventeen as a juvenile (Doc. 108-1 at 10). The ACCA states that "[t]he term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a violent felony." 18 U.S.C. § 924(e)(2)(C). Even if this were not the case, however, Defendant was bound over to the Lucas County Court of Common Pleas and tried as an adult for the 1990 offenses (11/30/09 Sentencing Hr'g Tr. at 7-9). This argument is also unavailing, and counsel was not ineffective for failing to raise it.

### **Interstate Commerce Jurisdictional Requirement**

Defendant argues his counsel should have challenged federal jurisdiction because he was not involved with the transport of the weapon in interstate commerce (Doc. 108 at 7). The parties stipulated that the gun had traveled in interstate commerce because it was manufactured in Brazil and seized in Ohio (Doc. 63 at 2). Defendant is not required to have transported the weapon himself. 18 U.S.C. § 922(g) (making it unlawful for felons "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce"). Counsel was well within "professional

reasonableness" to decline to challenge the interstate commerce component, and Defendant has not articulated a reason why the gun was not, in fact, transported in interstate commerce.

### General Ineffective Assistance Claims

Finally, many of Defendant's complaints about his counsel's performance related to decisions made by trial counsel that were clearly within counsel's reasonable professional judgment regarding trial strategy. Defendant's complaints reflect mere disappointment or disagreement with counsel's choices. Defendant claims, for example, that his counsel failed to "capitalize on" several things Defendant perceived to be favorable, including particular witnesses' testimony and specific statements made by this Court and the Government's attorney (Doc. 108-1 at 13 & 15). Defendant alleges his counsel did not use enough "[c]ircuit-specific case law and preceden[t]," and either ineptly used or omitted specific cases (Doc. 108-1 at 10, 12, 14-15). Defendant also alleges constitutional ineffectiveness because counsel did not prevail on particular issues. Allegation 12, for example, states, "[counsel p]roved ineffective in showing that Defendant IS NOT the persona or criminal that fits the legislative intent as applied and drafted by and through the legislature" (Doc. 108-1 at 14). Defendant also states counsel should have "challenge[d] all related Discovery associated with [the] case," but fails to explain to what discovery he is referring, and how the discovery could have been "challenged" under the Federal Criminal Rules (Doc. 108-1 at 10).

Some of Defendant's allegations are simply factually wrong. For example, Defendant alleges counsel failed to object to certain items in the Pre-Sentencing Investigative Report and the jury instructions (Doc. 108-1 at 10-11, 13). But counsel did object to both (Docs. 53, 74 & 78; 11/30/09 Sentencing Hr'g Tr. at 10-14).

> Similarly, Defendant alleges his counsel (Doc. 108-1 at 16):
>
> Proved ineffective in his inability to provide the court with additional discovery and support documentation substantiating that witness "Johnson" had in fact reported the sighting of the gun being placed into a black leather jacket by "Stuart" was in fact reported to and documented by ATF agents who interviewed Johnson after the event. Such report would further substantiate the authenticity of this witness and the alibi.

This document relating to Johnson's interview with ATF agents was not only provided to this Court, it was used at trial by the Government (Doc. 69, Gov't Ex. 13; 8/12/09 Trial Tr. at 95). Unfortunately for Defendant, the document did not "substantiate the authenticity of the witness"; in fact, it was used to impeach Johnson, as it directly contradicted her trial testimony (8/12/09 Trial Tr. at 94-95). Not relying on the interview report was therefore reasonable strategy.

Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal citations and quotation marks omitted) Defendant's counsel was not ineffective merely because the jury returned a verdict against him. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Defendant has not overcome the presumption that his counsel was effective simply by identifying points on which he would like to have prevailed and second-guessing choices within his attorney's professional judgment.

Furthermore, assuming *arguendo* that Defendant's trial counsel was deficient with respect to any action described above, Defendant has not demonstrated the requisite prejudice under *Strickland*.

11

To show prejudice, Defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The Sixth Circuit has identified the issue as "not whether [the defendant]'s attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).

*Morrow* was premised on petitioner's "discontent[] focused mostly on tactical decisions regarding whether to object or which witnesses to call." *Id*. The Sixth Circuit found petitioner's claim that the outcome of the proceedings would have been different was hollow because substantial evidence supported the conviction. Here, substantial evidence also supported Defendant's conviction, including, most saliently, Defendant's own videotaped confession.

## CONCLUSION

Defendant cannot meet either prong of the test for ineffective assistance of counsel. He has failed to show that his counsel's decisions were outside a wide range of professional reasonableness, and that but for such errors Defendant would have prevailed at trial.

For the reasons above, Defendant's Motion to Withdraw/Strike (Doc. 113) is denied, and his Section 2255 Motion (Doc. 108) is denied. Further, Defendant has not made a substantial showing of the denial of a constitutional right; therefore, this Court declines to issue a certificate of appealability under 28 U.S.C. § 2253.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 25, 2012